***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. Therefore, the Full Commission enters the following award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner as
 STIPULATIONS
1. An employee-employer relationship existed between plaintiff and defendant at all times pertinent hereto.
2. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. PMA Insurance Group administered workers' compensation coverage for the self-insured employer.
4. On January 14, 2001 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant.
5. The claim was accepted as compensable and medical benefits were paid for those expenses approved by defendant.
6. Plaintiff filed a Form 18, Notice of Accident and Claim and a Motion for medical treatment on April 12, 2002.
7. Defendant filed a letter in response to the motion for medical treatment dated April 26, 2002.
8. An order by Edward Garner, Deputy Commissioner was filed on July 2, 2002 denying Plaintiff's Motion for Medical Treatment and allowed the plaintiff's a second opinion as to the PPD rating resulting from her compensable elbow condition. Plaintiff did not appeal this order of Deputy Commissioner Garner.
9. Plaintiff filed another Motion for Medical Treatment on June 17, 2003 after evaluation by H. Boyd Watts, M.D.
10. Defendant filed a letter in response to the motion for medical treatment dated June 19, 2003.
11. An Order by Chrystina F. Kesler, Special Deputy Commissioner was filed on June 24, 2003 denying plaintiff's Motion for Medical Treatment.
12. Plaintiff filed a Form 33, request that the claim be assigned for hearing on June 30, 2003.
13. Defendant filed a Form 33 R, response to request that claim be assigned for hearing dated July 2, 2003.
14. Plaintiff's average weekly wage is $516.80, yielding a compensation rate of $344.55 per week.
15. Plaintiff continued to be employed at Unifi through April 30, 2003.
16. The depositions of Dr. Weingold, Dr. Williams and Dr. Watts and Gladys Speaks who was unavailable on the date of hearing were submitted and received into evidence.
In addition, the parties stipulated into evidence the following:
1. Packet of medical records and reports.
2. Packet of motions, responses and orders filed in the claim.
3. Letter from Mr. Smith dated June 5, 2003.
4. Letter from Mr. Freedman dated June 24, 2003.
The Pre-Trial Agreement dated December 15, 2003, which was submitted by the parties, is incorporated by reference.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following
 FINDINGS OF FACT
1. Plaintiff, who is thirty-five years old and a high school graduate, was employed by defendant for approximately thirteen years as of January 2001. Her job as operator involved running a machine, which spooled yarn onto tubes.
2. On January 14, 2001 plaintiff sustained a compensable injury by accident when she struck her left elbow on a take-up bar as she was coming down from her machine. She experienced immediate pain as well as a numb and tingling sensation. Following the injury, she reported it to her supervisor but did not seek immediate medical attention. Her left elbow continued to bother her during the next several months and in April 2001 she finally went to the plant nurse who sent her to Dr. Susan Yuson, an internist. Dr. Yuson examined her on April 27, 2001 and noted mild swelling of the left elbow, the doctor initially prescribed oral steroid medication and later injected the left elbow. Dr. Yuson allowed plaintiff to remain at her regular job, which plaintiff had continued to perform since the injury. On May 8, 2001 plaintiff returned to Dr. Yuson but had not improved. Dr. Yuson diagnosed left medial epicondylitis, injected plaintiff's elbow and placed plaintiff on light duty, which was provided by defendant-employer. Dr. Yuson continued to treat plaintiff but as plaintiff's complaints of pain did not improve, Dr. Yuson referred plaintiff to an orthopedic surgeon.
3. Defendant then sent plaintiff to Dr. Weisler, an orthopedic surgeon, who examined her on June 5, 2001. Dr. Weisler noted that plaintiff's examination was essentially normal, as he found no weakness or atrophy and normal strength, pulse and sensation. X-rays taken that day were also normal. Dr. Weisler noted plaintiff had pain over the medial left elbow. He diagnosed her with medial epicondylitis with secondary cubital tunnel syndrome. It was his impression that the condition was resolving and he did not recommend surgery. However, he did recommend a protective device for the left elbow since plaintiff had bumped it at work on other occasions after her injury. Dr. Wiesler referred plaintiff back to Dr. Yuson.
4. Plaintiff's complaints did not improve and she requested to be allowed to see another physician. Defendant sent her to Dr. Weingold, an orthopedic surgeon who specializes in the hand and upper extremity disorders. He examined her on August 23, 2001 and ordered nerve conduction studies, which showed evidence of mild ulnar neuropathy at the left elbow. Since plaintiff had remained symptomatic despite conservative treatment, he recommended surgery, and on October 17, 2001 he operated on her left elbow. He performed a release of the ulnar nerve and a left medial epicondylectomy.
5. On October 25, 2001 when plaintiff returned to Dr. Weingold he found her to be in good condition following the surgery. He released plaintiff to return to one-handed work with no use of the left arm and referred her to physical therapy.
6. Dr. Weingold monitored plaintiff's condition and continued her physical therapy. Plaintiff continued to complain of pain along the medial epicondyle. Dr. Weingold found tenderness over the elbow but plaintiff had a full range of motion, a negative Tinel's sign and full sensation of the ulnar nerve. Dr. Weingold injected the elbow to resolve the residual soreness and noted that the continued tenderness was not unusual. Dr. Weingold released plaintiff to return to regular duty, without restriction on January 1, 2002.
7. Plaintiff returned to Dr. Weingold on January 8, 2002 complaining that the injection had not helped. She was experiencing generalized as opposed to localized pain over the left elbow. He did not understand why she was continuing to experience such pain, so he ordered an MRI and prescribed anti-inflammatory medication for her. The MRI only revealed post-surgical changes with no other abnormalities. Dr. Weingold last saw plaintiff on January 25, 2002. At that appointment, he released her to return to work at regular duty effective the next day. He released her from medical care to return as needed and assigned a 30% permanent partial disability rating to her left elbow.
8. On January 26, 2002 plaintiff returned to regular duty. On March 21, 2002 she went to her family doctor, Dr. Williams. Plaintiff complained of pain over her left elbow and pain in her left shoulder when moving her arm and that her grip strength was weakened. Dr. Williams injected plaintiff's left shoulder and ordered nerve conduction studies of her left arm. Dr. Williams advised plaintiff to stay out of work for six weeks.
9. Plaintiff presented the note from Dr. Williams taking her out of work. Nurse Matthews understood that plaintiff had seen her family physician for her accepted compensable elbow injury without notifying or seeking permission from defendant-employer. Nurse Matthews referred plaintiff back to Dr. Yuson.
10. On March 22, 2002 plaintiff presented to Dr. Yuson complaining of left shoulder pain. Dr. Yuson found tenderness on top of the left shoulder down to the left bicep with decreased rotation of the shoulder. Dr. Yuson found good grip strength in both hands, no localized tenderness over the left elbow and full range of motion of the left elbow. Dr. Yuson diagnosed a left shoulder strain. Dr. Yuson stated and the Full Commission finds that plaintiff's left shoulder problems were not related to plaintiff's job nor were they related to plaintiff's compensable left elbow injury.
11. On March 27, 2002 plaintiff returned to Dr. Williams complaining of persistent pain in her left shoulder with decreased range of motion. X-rays of the shoulder were normal. Dr. Williams diagnosed persistent shoulder pain and suggested plaintiff be evaluated by an orthopedic surgeon. Upon plaintiff's request, Dr. Williams released her to return to work. Dr. Williams was unable to diagnose the problem with plaintiff's shoulder and stated he would defer to an orthopedist as to the diagnosis and cause of plaintiff's persistent left shoulder pain. Dr. Williams' belief that plaintiff's shoulder pain was related to her left elbow injury was based solely on the temporal relationship between plaintiff's shoulder pain and her left elbow injury.
12. Dr. Weingold stated that the surgery he performed on plaintiff's left elbow would not have any impact on her shoulder.
13. On April 8, 2002 plaintiff submitted a motion for medical treatment to the Industrial Commission as she continued to have pain in her left arm and shoulder and requesting that she be allowed to see a physician of her own choosing. Defendant responded to the motion outlining the medical care that had been provided. On July 2, 2002 Deputy Commissioner Edward Garner filed an Order denying plaintiff's motion for additional medical treatment but allowed plaintiff to seek a second opinion as to the permanent partial disability rating to her elbow. No appeal of this order was made by either party.
14. Plaintiff continued to work for defendant-employer as a machine operator. In late 2001, Plant 3 closed for economic reasons. Plaintiff was transferred to Plant 2. In April 2002, plaintiff returned to Dr. Williams with complaints of arm pain. Defendant-employer transferred plaintiff to Plant 5, as it was a more automated plant in April 2002. Plaintiff did not seek medical treatment or complain to any agent of defendant-employer after this transfer.
15. On March 2003, almost one year later, a performance audit was done on plaintiff's job by Gladys Speaks, a training instructor employed by defendant-employer. Ms. Speaks routinely performed performance audits on key employees. Plaintiff was a key employee who was audited twice a year. Plaintiff requested that Ms. Speaks perform her audit. During the audit, which lasted two days, plaintiff met her production goals but refused to use her left arm while working complaining of pain in her left arm. Ms. Speaks counseled plaintiff to perform her job correctly using both arms, as she appeared to be placing herself at risk of injury since she had to climb a ladder regularly while performing her job and she would only use her right hand to hold onto the ladder. There was also some risk of damage to the machinery since plaintiff could not hold a hose with her left hand as she was supposed to and the hose was "nipping" the metal. Ms. Speaks did not recommend any discipline or that plaintiff be laid off from employment in the report she turned in to her supervisor. Although plaintiff alleged that she was fired due to her inability to meet production due to her compensable left elbow injury, she never received any discipline or corrective action for failing to meet production.
16. Although plaintiff alleged at the hearing before the deputy commissioner that she was written out of work on April 4, 2003 and placed on short-term disability until her elbow could be fixed, she provided no documentation that she had been removed from work on April 4, 2003. Further, she had not seen any physician in order to be written out of work on or before that date. According to Nurse Matthews, plaintiff was not placed on short-term disability in April 2003 as none of the required paperwork was completed or requested. Plaintiff's allegation is not accepted as credible.
17. Plaintiff was laid off on April 17, 2003 due to economic problems and provided with a severance agreement. Plaintiff's position as a machine operator was eliminated due to a lack of business. Plaintiff was one of several hundred employees laid off in April 2003 due to economic problems. Plaintiff has not returned to work or sought any employment since being laid off from defendant-employer.
18. On April 23, 2003 plaintiff saw Dr. Boyd Watts, an orthopedic surgeon who spends 20 to 25 percent of his practice working on hands and elbows. Dr. Watts ordered nerve conduction studies, which were borderline at the wrist and in the high range of normal at the left elbow. Dr. Watts did not perform this type of elbow surgery in the same manner as Dr. Weingold had performed the operation, so he referred her to his partner, Dr. Ferrero, for further evaluation.
19. On April 28, 2003 plaintiff was evaluated by Dr. Ferrero. His examination revealed a droop at plaintiff's left shoulder which if she changed her posture she was able to give herself proper shoulder symmetry. Plaintiff had good range of motion of her left shoulder with no scapular winging. Plaintiff had full range of motion of her elbows, wrists and hands. Plaintiff reported coolness and discoloration of her left arm, but Dr. Ferrero found no evidence of these symptoms. Dr. Ferrero was unable to reconcile plaintiff's complaints to the examination. Since she described symptoms, which could be due to complex regional pain syndrome (reflex sympathetic dystrophy), he thought that she should be evaluated by Dr. Hanson, a pain management specialist. He also recommended formal nerve testing. Although at least some of her symptoms could be due to irritation from the sutures, he thought that further testing and evaluation should be conducted before recommendations were made regarding treatment for the elbow. He believed plaintiff could have irritation at the elbow due to the non-absorbable sutures used in her surgery.
20. On June 13, 2003 plaintiff submitted a motion for additional medical treatment to the Industrial Commission seeking to receive the treatment recommended by Dr. Ferrero and Dr. Watts. Defendant responded to the motion providing information as to the medical treatment that had been previously provided. In an order filed June 24, 2003 Special Deputy Commissioner Chrystina Kesler denied plaintiff's motion for additional medical treatment. Plaintiff filed a Form 33 appealing this decision.
21. After reviewing Dr. Ferrero's report, Dr. Watts was of the opinion that most of plaintiff's symptoms were due to irritation from the sutures and he recommended that they be removed. He also recommended that the ulnar nerve be checked to make sure that it had not moved since the operation, but he was not aware that Dr. Weingold had left the nerve in its normal groove. Dr. Watts believed the only additional medical treatment plaintiff required is to remove the sutures from inside of her elbow. Dr. Weingold agreed that he could remove the sutures although the last time he examined plaintiff he felt there was no need.
22. Plaintiff is not entitled to any ongoing indemnity benefits because her present lack of work is not due to her compensable injury, but due to an economic layoff, which affected a significant number of employees. At the time of the layoff, plaintiff was performing a regular duty job as a machine operator, without limitations. Additionally, as plaintiff had been released to regular duty without restriction by her treating physician, Dr. Weingold, in January 2002, well before her layoff, and no physician placed any subsequent physical limitations on her as of April 2003, her period of disability ended regardless of the availability of work for plaintiff.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following
 CONCLUSIONS OF LAW
1. The greater weight of the evidences shows that plaintiff's shoulder condition and alleged symptoms of complex regional pain syndrome are not causally related to her compensable injury by accident to her left elbow of January 14, 2001. Click v. Pilot Freight Carriers, 265 S.E.2d 389
(1980); N.C. Gen. Stat. § 97-2(6).
2. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and the extent of disability. Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682
(1982). Plaintiff failed to show by the greater weight of the evidence that she had any periods of disability, which were related to her compensable January 14, 2001 elbow injury. N.C. Gen. Stat. § 97-29.
3. Plaintiff has failed to prove that she is permanently and totally disabled or that it would be futile for plaintiff to engage in a job search in light of her medical restrictions, age of thirty five years, education and experience. Whitley v. Columbia Lumber Mfg. Co., 318 N.C. 89,348 S.E.2d 336 (1986); Kennedy v. Duke Univ. Med. Ctr., 101 N.C. App. 24,33, 398 S.E.2d 677, 682 (1990); Burwell v. Winn-Dixie Raleigh, Inc.,114 N.C. App. 69, 73-74, 441 S.E.2d 145, 149 (1994).
4. Plaintiff is entitled to permanent partial disability compensation as a result of the thirty percent (30%) rating to her left elbow. N.C. Gen. Stat. § 97-31.
5. Plaintiff is entitled to have defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-2(19). This includes the removal of her sutures by Dr. Weingold from her earlier surgery. N.C. Gen. Stat. §§ 97-25 97-25.1.
6. Defendant is entitled to deduct half the cost of the mediated settlement conference from the benefits due plaintiff because this sum was advanced by defendant on behalf of plaintiff to the mediator in the unsuccessful mediation of this claim. Rule 7(c), N.C.I.C. Rules for Mediated Settlement and Neutral Evaluation Conferences.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Plaintiff's claim for workers' compensation benefits for disability after April 5, 2003 is, and under the law must be, DENIED.
2. Plaintiff's claim for permanent and total disability benefits is, and under the law must be, DENIED.
3. Defendant shall pay plaintiff for her 30% impairment rating to the elbow, subject to an attorney's fee set out below. In addition, defendant shall receive a credit in the amount of plaintiff's share of the mediator's fee. This credit shall offset the compensation awarded herein.
4. Plaintiff's motion to change treating physicians is denied. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff, including the removal of her sutures by Dr. Weingold, as a result of her compensable injury of January 14, 2001 when bills for same have been submitted to and approved by the Industrial Commission subject to statutory limitations, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
5. Plaintiff's counsel is entitled to have 25% of the amount awarded in paragraph 4 of this award to be deducted from the lump sum due plaintiff and paid directly to plaintiff's counsel.
6. Defendant shall bear the costs however defendant and plaintiff shall each pay half the cost of the mediation settlement conference.
This the 29th day of July 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER